# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-EC-00899-SCT

*JOHN A. (PAP) MOORE*

*v.*

*STACEY W. PARKER*

## ON MOTION FOR REHEARING

DATE OF JUDGMENT: 06/09/2006
TRIAL JUDGE: HON. JAMES T. KITCHENS, JR.
COURT FROM WHICH APPEALED: CHICKASAW COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT: SAMUEL L. BEGLEY
GARY GOODWIN
ATTORNEYS FOR APPELLEE: RONALD D. MICHAEL
BILLY BRONSON TABLER
NATURE OF THE CASE: CIVIL - ELECTION CONTEST
DISPOSITION: AFFIRMED IN PART; REVERSED AND
RENDERED IN PART - 08/16/2007
MOTION FOR REHEARING FILED: 03/19/2007
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT**:

¶1.     The motion to correct the record and the motion for rehearing filed by John A. (Pap) Moore are both granted. The previous opinion is withdrawn, and this opinion is substituted therefor.

¶2.     This is an appeal from an order of a Special Election Contest Tribunal with regard to the May 2005 Democratic mayoral primary in Houston, Mississippi. Stacey Parker, a mayoral candidate, filed a petition for judicial review of the primary in the Circuit Court of

Chickasaw County. The winner of the primary, John Moore, intervened as a party defendant and filed a Motion to Dismiss and/or for Summary Judgment. The case was tried, and the Special Tribunal ordered a special, run-off primary election. Moore appeals that decision to this Court.

## FACTS AND PROCEDURAL HISTORY

¶3. On May 3, 2005, the Democratic primary was held for the City of Houston, Mississippi. Seeking the nomination for mayor were Laverne Collins, John Fred Lancaster, Appellant John A. (Pap) Moore and Appellee Stacey W. Parker. The official returns certified by the City of Houston Municipal Democratic Executive Committee (Executive Committee) reflected that the winner was Moore, receiving 921 votes, 50.03% of the votes cast, and that Parker obtained the second-highest number of votes, receiving 552 votes, 29.98% of the votes cast. Had Moore received one less vote, a run-off election automatically would have taken place between Moore and Parker.

¶4. Immediately after the executive committee certified the returns, Parker submitted to the Houston City Clerk a handwritten note stating, "I, Stacey W. Parker, hereby contest the mayoral election of Houston, MS. May 3, 2005," signed by Parker and dated May 4, 2005. Later that day the city clerk notified each of the other three mayoral candidates that Parker 1) had filed a notice of contest, 2) would have the right to examine the ballot boxes, and 3) had scheduled an examination for 9:00 a.m. on Monday, May 9, 2005. Moore's representative, Ike Brown, attended the inspection.

¶5. On May 11, 2005, Parker personally served on one of the members of the executive committee a Petition to Contest the mayoral primary. Though the committee met twice, each

2

time scheduling discussion of the election contest, the committee never addressed the petition. At the third meeting on June 7, 2005, the committee was informed by election division attorneys from the Mississippi Attorney General's Office that the executive committee no longer had jurisdiction to consider matters relating to the May 3 primary.

¶6.     On June 22, 2005, Parker filed a Petition for Judicial Review of Election Contest in the Circuit Court of Chickasaw County, Mississippi. On June 28, 2005, this Court entered an Order naming a special judge to preside over the election contest proceedings. On July 28, 2005, Moore moved to intervene as a defendant, attaching his answer, affirmative defenses, cross-claim and motion to dismiss and/or for summary judgment. On September 6, 2005, the circuit court entered an Order partially overruling Moore's motion to dismiss and/or for summary judgment. After a trial in May 2006, the special judicial tribunal, made up of a circuit court judge from another district and three members of the Houston Election Commission, found unanimously that at least nine illegal votes were cast for Moore and consequently, on June 9, 2006, ordered a special primary run-off.

¶7.     Moore appealed and filed with this Court an emergency motion to stay and for expedited appeal.  A panel of this Court denied Moore's motion to stay, but later, granted his motion for an expedited appeal.

## DISCUSSION

¶8.     As an initial matter, Parker disputes this Court's authority to consider the issues raised on appeal. Parker cites Mississippi Code Annotated Section 23-15-933 (Rev. 2001) for the proposition that the election order is not subject to review by this Court since the order was executed by the presiding judge and joined by all three of the Houston Municipal Election

3

Commissioners, the four of whom comprised the special tribunal. Mississippi Code Annotated Section 23-15-933 reads:

> The contestant or contestee, or both, may file an appeal in the Supreme Court within the time and under such conditions and procedures as are established by the Supreme Court for other appeals. If the findings of fact have been concurred in by all the commissioners in attendance, provided as many as three (3) commissioners are and have been in attendance, the facts shall not be subject to appellate review. But if not so many as three (3) of the commissioners are or have been in attendance, or if one or more commissioners dissent, upon review, the Supreme Court may make such findings as the evidence requires.

¶9. While the statute deems final the tribunal's findings of fact, its legal conclusions are reviewable by this Court on appeal. Accordingly, the statute presents no bar to any issues in this case since all issues presented are questions of law. Moreover, the issues raised for this Court's consideration do not require review of the findings of fact the tribunal made with regard to the nine fraudulently voted ballots.

¶10. All issues raised by Moore require this Court to interpret law, and thus, are reviewed de novo. *Boyd v. Tishomingo County Democratic Executive Comm.*, 912 So. 2d 124, 128 (Miss. 2005).

### I. Whether the Special Tribunal Had Jurisdiction to Consider Parker's Petition for Judicial Review

¶11. Moore contends that the special tribunal lacked subject matter jurisdiction due to Parker's failure to meet jurisdictional prerequisites enumerated in our election contest statutes. Moore alleges six procedural deficiencies.

### A. Whether Parker Filed His Petition Contest with the Houston Democratic Executive Committee

4

**B. Whether Parker's Petition to Contest Provided Sufficient Grounds for Contesting the Election**

¶12. The two errors raised alleging violation of Mississippi Code Annotated Section 23-15-921 are considered together. This code section provides the procedure for contesting a primary election. The contestant must "within twenty (20) days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which the election was held, setting forth the grounds upon which the primary election is contested." Miss. Code Ann. § 23-15-921 (Rev. 2001).

¶13. Moore contends that Parker filed two petitions to contest, the handwritten note on May 4, 2005, and a more formal, more specific petition on May 11, 2005. Moore asserts that Parker did not "file [his May 4, 2005,] petition with the secretary, or any member of the county executive committee in the county in which the election was held. . ." as required by Mississippi Code Annotated Section 23-15-921. Indeed, Parker filed his May 4, 2005, petition with the Houston City Clerk. However, on May 11, 2005, he personally served one of the members of the Houston Democratic Executive Committee with his second petition. Thus, while Parker did not file his May 4, 2005, petition with a member of the Houston Democratic Executive Committee pursuant to Mississippi Code Section Annotated 23-15-921, Parker filed *a* petition with the Houston Democratic Executive Committee.

¶14. Further, Moore contends that the May 4, 2005, petition did not set forth sufficiently specific allegations as required by Mississippi Code Section 23-15-921. The language of the contest or petition or complaint before the Executive Committee must be reasonably specific

in its charges and may not be mere general language. ***Harris v. Stewart***, 187 Miss. 489, 507, 193 So. 339 (1940) (citing ***Shaw v. Burnham***, 186 Miss. 647, 191 So. 484, 486 (1939)).

¶15.   Moore directs the Court to the handwritten document Parker submitted to the Houston City Clerk on May 4, 2005, which read "I, Stacey W. Parker, hereby contest the mayoral election of Houston, MS. May 3, 2005." Parker responds and Moore concedes that Parker submitted a petition on May 11, 2005, containing more specific allegations. However, the parties further dispute the validity of the petition submitted on May 11, 2005. While Moore accurately notes that Section 23-15-921 does not provide for submission of a second petition, as Parker responds, the statute also does not prohibit submission of an additional petition. Therefore, Moore's argument concerning the specificity of the May 4, 2005, petition is irrelevant since Parker submitted a more specific petition on May 11, 2005, the specificity of which Moore does not challenge.

        **C.**      **Whether Parker Engaged in an Unlawful Inspection of the Ballot Boxes Prior to Filing His Petition to Contest**

¶16.   Moore alleges that Parker failed to meet the notice requirement of Mississippi Code Annotated Section 23-15-911 (Rev. 2001) which requires three days' notice to each candidate before a contestant can examine the ballot boxes after the primary.[1] Parker replies

---

[1] Mississippi Code Annotated Section 23-15-911 reads in pertinent part:

At any time within twelve (12) days after the canvass and examination of the box and its contents by the election commission or executive committee, as the case may be, any candidate or his representative authorized in writing by him shall have the right of full examination of said box and its contents upon three (3) days' notice of his application therefor served upon the opposing candidate or candidates, or upon any member of their family over the age of eighteen

6

that he complied by provision of his handwritten petition on May 4, 2005, to the city clerk, who in turn notified each of the candidates of Parker's right to examine the boxes. The notice was signed by each of the four candidates on May 4, 2005, five days before Parker inspected the ballot boxes on May 9, 2005. Thus, this argument is without merit.

> **D.** **Whether the Two Attorneys Who Signed Parker's Petition for Judicial Review Were Incapable of Independent Investigation Solely Due to Their Employment at the Same Firm**

¶17. Mississippi Code Annotated Section 23-15-927 (Rev. 2001), requires that two attorneys who have made an independent investigation certify the petition for judicial review.[2] Moore asserts that Parker's petition was certified by two attorneys who were incapable of "independent" investigation even though they were employees of the same firm. The question is to what and/or whom must the attorneys be independent – each other or the contest? Moore asserts that the attorneys must be independent from each other. However, to be "independent" an attorney only need be disassociated from the contest, not from the other certifying attorney.

_____

(18) years . . . .

[2] Mississippi Code Annotated Section 23-15-927 reads in pertinent part:

such petition for a judicial review shall not be filed unless it bear the certificate of two (2) practicing attorneys that they and each of them have fully made an independent investigation into the matters of fact and of law upon which the protest and petition are based and that after such investigation they verily believe that the said protest and petition should be sustained and that the relief therein prayed should be granted. . . .

7

¶18.   The attorneys may not be associated with the contestant, as this Court has stated "that the certificate should be signed by unbiased lawyers; and that 'such a purpose eliminates attorneys who represent a contestant at the time their investigation of the matter is made, or at the time his petition for judicial review is filed.'" *Pearson v. Jordan*, 186 Miss. 789, 192 So. 39, 40 (1939) (quoting *Pittman v. Forbes*, 186 Miss. 783, 191 So. 490 (1939)). Further, the attorneys may not be associated with the contest. "The right of a contestee to an office to some extent is tainted by the proceeding; and it is important that this independent investigation should be made by disinterested attorneys, having no connection with the case." *Id.* Further, this Court has stated that "the only facts which would disqualify a certifying attorney are: Employment of the attorney, past, present, contingent or prospective, by or for the contestant as his attorney in respect to the matter involved in the contest, or such facts as would disqualify a judge." *Upton v. McKenzie,* 761 So. 2d 167, 171 (Miss. 2000) (citing *Harris*, 187 Miss. at 504-05, 193 So. at 343).

¶19.   On numerous occasions, this Court has illustrated the meaning and purpose of the independent investigation requirement as detachment of the attorneys from the contest, not from each other. *Compare Esco v. Scott*, 735 So. 2d 1002 (Miss. 1999) (an attorney who is "of counsel" of the firm representing the contestant is not independent) *and McDaniel v. Beane*, 515 So. 2d 949 (Miss. 1987) (a member of the law firm representing the contestant is not independent) *with Upton v. McKenzie*, 761 So. 2d at 171 (certifying attorney is independent where he does not represent the contestant with respect to the election contest, is not associated with contestant's counsel in any way, and is not precluded by Canon 3C of the Code of Judicial Conduct); *Harris*, 187 Miss. at 504, 193 So. at 343 (an attorney who is

a close friend of the contestant's attorney with whom he sometimes associates as counsel on cases and whose offices happen to be on the same floor of the building in which both work is independent). As indicated numerous times by this Court, whether each of the two certifying attorneys may perform an "independent" investigation is not determined by the nature of their relationship with each other but their association with the contest. We reject Moore's argument that attorneys employed by the same firm are incapable of performing independent investigations.

### E.    Whether Parker Filed Forthwith His Petition for Judicial Review

¶20.    As a predicate to a petition for judicial review the contestant must first present his grievance to the county, or in this case, municipal executive committee. *Harris*, 187 Miss. at 507, 193 So. at 343. Subsequently, if a contestant seeks judicial review, Mississippi Code Annotated Section 23-15-927 instructs:

> [w]hen and after any contest has been filed with the county executive committee, or complaint with the State Executive Committee, and the said executive committee having jurisdiction shall fail to promptly meet or having met shall fail or unreasonably delay to fully act upon the contest or complaint, or shall fail to give with reasonable promptness the full relief required by the facts and the law, the contestant shall have the right forthwith to file in the circuit court of the county wherein the irregularities are charged to have occurred . . . .

Parker filed his petition for judicial review on June 22, 2005. Moore asserts that the petition was not filed "forthwith" since June 22 was forty-nine days after the primary. Parker replies that "forthwith" is not defined by a particular amount of time, but is determined by the specific facts and circumstances surrounding each case.

9

¶21. As Parker notes, this Court recently held in ***Cook v. Brown***, 909 So. 2d 1075, 1079 (Miss. 2005),

> [t]here has never been an exact number of days determined as a minimum to meet the "forthwith" requirement. Instead, this Court has upheld the well-established and long-standing principle. . . 'that the term "forthwith" connotes no specific fixed time limit. Rather, its meaning depends upon consideration of the surrounding facts and circumstances and varies with each particular case.' ***Smith v. Deere***, 195 Miss. 502, 507, 16 So. 2d 33, 35 (1943); ***Turner v. Henry***, 187 Miss. 689, 695-96, 193 So. 631, 632 (1940); ***Harris v. Stewart***,] 187 Miss. [489] at 502-04, 193 So. [339] at 342 [(1940)].

(quoting ***Pearson***, 541 So. 2d at 450). Moore directs the Court to measure the time from the date of the primary election. However, the reference point for the running of time is the date of the final action or decision by the party executive committee. *See, e.g., **Cook***, 909 So. 2d at 1079 ("In this instance, Cook's filing of the petition 39 days *after the Quitman County Democratic Executive Committee conducted the hearing* on September 4, 2003 was not "forthwith" as required by the statute") (emphasis added).

¶22. In ***Pearson***, this Court deemed "forthwith" a petition filed thirteen days, nine working days, after the committee decision. 541 So. 2d at 450. The committee never reached a decision in this case. Parker filed his petition for judicial review on June 22, 2005, fifteen days, eleven working days, after the last committee meeting on June 7, 2005, in which the contest was scheduled to be addressed. Filing within eleven working days is not a significant departure from the nine working days this Court found to be "forthwith" in ***Pearson***. *But see **Turner***, 193 So. at 695 (holding that the filing of a petition twenty-six days after the final executive committee action "was stretching 'forthwith' too far"). In this case, the "forthwith" requirement is satisfied. We find this assignment of error to be without merit.

10

**F.** **Whether the Special Tribunal in its Review Exceeded the Scope of Matters Alleged in Parker's Petition to Contest**

¶23. Moore asserts that the tribunal based its ruling for a special election entirely on matters not raised by Parker in his election contest petition, and thus the tribunal exceeded its scope of review. The special tribunal is limited in its review and examination to matters presented by the original contest petition brought before the executive committee. *Waters v. Gnemi*, 907 So. 2d 307, 325 (Miss. 2005); *Darnell v. Myres*, 202 Miss. 767, 773, 32 So. 2d 684, 685 (1947) (citing *Harris*, 187 Miss. at 507). The tribunal may, however, consider germane matters which happened during or since the hearing before the executive committee and matters merely explanatory or incidental to the matters originally raised. *Id.*

¶24. Parker complained of illegal and fraudulent votes, namely, legally insufficient affidavits, illegal affidavit voting, the counting of votes of deceased individuals, and insufficiencies in the contents of and documentation concerning ballot boxes. Parker further noted specific procedural deficiencies on certain absentee ballot envelopes, concerning items such as signatures and uncompleted blanks.

¶25. The special tribunal stated "[w]e find by clear and convincing evidence that there were at least nine illegal or fraudulent ballots cast by Ms. Gardner for Mayor Moore." The tribunal found that David Douglas was assisted in voting in person and by absentee ballot by Martha Gardner. The tribunal also concluded that Gardner illegally delivered, voted, and returned an absentee ballot in Ottie Mae Criddle's name. The tribunal further found that Gardner fraudulently voted ballots on behalf of Michael Sanders, Jason Wright, Lora Weeks Carter, Travis Dye, Alice Faye Carter, Troy Brasfield and Glendora Kendall. Based on its findings

11

of illegally and/or fraudulently voted absentee ballots, in accord with Parker's petition, which specifically alleged illegal affidavit voting, the special tribunal found enough illegal votes cast for Moore to change the outcome of the primary and warrant a run-off.

¶26. Thus, we find the tribunal based its order on grounds within the scope of the contest petition, and Moore's assertion otherwise is without merit.

**II. Whether the Order of the Special Tribunal Erroneously Relied on Inadmissible Hearsay Testimony of One of Parker's Witnesses to Conclude That Nine Absentee Ballots Were in Fact Cast for Moore as the Basis for Calling a New Election**

¶27. Moore asserts that, since the nine ballots found to be voted for Moore were never challenged at the polling place, there was no way to know directly how these votes were marked, unless some additional evidence was adduced. Moore asserts that "[t]he special tribunal exclusively relied upon irrelevant hearsay contained in uncorroborated testimony of David Douglas" to determine that the allegedly illegal votes were cast for Moore.

¶28. This Court consistently has stated that failure to object to hearsay constitutes a waiver of the issue on appeal. ***Rubenstein v. State***, 941 So. 2d 735, 764 (Miss. 2006). Moore did not make a single objection when Douglas testified before the tribunal. Thus, this issue concerning admissibility of Douglas's testimony is waived.

**III. Whether the Circuit Court Erroneously Denied Moore's Motion for Summary Judgment by Relying Upon Affidavits That Do Not Relate to Any Allegations That Were Set Forth in Parker's Election Contest Petition**

12

¶29. Moore asserts that the affidavits of Estelle Sullivan and Ottie Mae Criddle and the letter/affidavit of Tammy Chamblee on which the tribunal relied in denying summary judgment were not related to the allegations set forth in Parker's contest petition.[3]

¶30. This Court reviews de novo a trial court's ruling on a summary judgment motion. *Williams v. Bennett*, 921 So. 2d 1269, 1271 (Miss. 2006). The evidence must be considered in the light most favorable to the non-moving party. *Brown v. Credit Ctr., Inc.*, 444 So. 2d 358, 362 (Miss. 1983). "[T]he pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Miss. R. Civ. P. 56(c).

¶31. Parker raised allegations of illegal affidavit voting, and each of the three affidavits which Moore asserts are unrelated describe facts indicative of fraudulent voting by Gardner. Tammy Chamblee relates from a conversation with her mother, Jean Eaves, how Gardner came to Eaves's home with an unsolicited ballot, sat beside Eaves as she voted it and carried Eaves's ballot with her when she left. The affidavits of Estelle Sullivan and Ottie Mae Criddle each claim that Gardner brought a ballot to her, marked the ballot, and she never saw

---

[3]The trial court made no mention in its order denying summary judgment of either the affidavits Moore questions nor the substantive issues raised in Parker's petition. The court only ruled on procedural deficiencies raised by Moore, the same deficiencies addressed on appeal by this Court. The trial court held in abeyance ruling on the contention that "there [was] no evidence to demonstrate irregularities or fraud in the conduct of the election" until the submission of briefs by each side. The only order addressing summary judgment which was included in the record was that of September 6, 2005. On September 26, 2005, a three-justice panel of this Court denied Moore's Petition for Interlocutory Appeal from the denial of summary judgment on September 6, 2005.

the ballot again. As for the question of whether the affidavits are related to the allegations Parker raises, the affidavits clearly concern the occurrence of illegal affidavit voting in the primary. Therefore, this issue is without merit.

> **IV.** **Whether the Special Tribunal Erroneously Ordered a Run-off of the Democratic Executive Committee When it Should Have in Fact Ordered a Special Election, to Be Called by the Governor and Conducted by the Municipal Election Commission under Miss. Code Ann. § 23-15-927 (Rev. 2001)**

¶32. The tribunal ordered a special primary run-off election between Moore and Parker. With regard to the decision of a special judicial tribunal, Mississippi Code Annotated Section 23-15-937 (Rev. 2001) reads in pertinent part:

> [I]f the said judgment be in favor of the contestant, the election of the contestee shall thereby be vacated and the Governor, or the Lieutenant Governor in case the Governor be a party to the contest, shall call a special election for the office or offices involved, if the contestee has already entered upon the term he shall vacate the office upon the qualification of the person elected at said special election, and may be removed by quo warranto if he fail so to do.

¶33. This Court has previously found in a similar situation that Mississippi Code Annotated Section 23-15-937 (Rev. 2001) controlled and required a special election. In *Smith v. Hollins*, 905 So. 2d 1267 (Miss. 2005), Smith and Hollins were the only two candidates in the Democratic primary and in the entire county race for supervisor. *Id.* at 1269. Smith won the primary with 510 votes to Hollins's 499 votes. *Id.* at 1270. The special tribunal cast out votes it found to be illegal and counted only the legal votes, resulting in Hollins being declared the winner with 519 votes to Smith's 516 votes. *Id.* This Court held that Mississippi Code Annotated Section 23-15-937 (Rev. 2001) governs special elections for contested

14

primary elections. *Smith*, 905 So. 2d at 1277. Pursuant to the statute, if the contestant prevails in an election contest and the contestee has already taken office, the appropriate remedy is that the Governor call a special election for the office. *Id.* The Court was reluctant to apply the statute for the reason Parker mentions, which is that only the primary winner's name would have been on the general election ballot. *Id.* Despite its reluctance, the Court applied the statute, declaring Smith the winner of the primary election and ordering a special election to be called for by the Governor. *Id.* at 1278.

¶34.    This case is distinguishable from *Smith* only in that Smith was the clear winner of the primary after the number of legal votes was determined by the tribunal and Smith was found to have the majority. The result of the tribunal findings in this case is that neither primary candidate has a majority and thus, that a special primary run-off election is necessary. This distinction does not prevent the application of Mississippi Code Annotated Section 23-15-937 (Rev. 2001), and accordingly, the office of mayor of the City of Houston shall be vacated and a special election shall be called by the Governor. The special tribunal erred in ordering a special primary run-off election to be held when it is statutorily mandated that the Governor call such election.

## CONCLUSION

¶35.    Having found no jurisdictional, evidentiary or other errors in the tribunal's findings of fact, this Court affirms the tribunal's judgment that nine illegal votes were cast for Moore. The tribunal erred, however, in ordering a special primary run-off election when a special election shall be called by the Governor pursuant to Mississippi Code Annotated Section 23-

15

15-937 (Rev. 2001). We reverse the tribunal's judgment to the extent that it ordered a special primary run-off election, and we render judgment here that the Governor shall call a special primary run-off election for the office of Mayor of the City of Houston in accordance with Section 23-15-937 (Rev. 2001) and other applicable law governing municipal special elections.

¶36. The Clerk of this Court is directed to mail a certified copy of this opinion to the Governor, the Attorney General, the Secretary of State, the City of Houston Election Commission and the City of Houston Clerk.

¶37. **AFFIRMED IN PART**; **REVERSED AND RENDERED IN PART.**

**WALLER AND DIAZ, P.JJ., CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. EASLEY AND LAMAR, JJ., NOT PARTICIPATING.**